NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **J & J SPORTS PRODUCTIONS, INC.** <br><br> Plaintiff, <br><br> v. <br><br> **ESTEBAN CASTRO and TROLLEY CAR BAR & GRILL CORPORATION d/b/a TROLLEY CAR,** <br><br> Defendants. | Docket No.: 14-cv-557 <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff brings this action pursuant to the Communications Act of 1934, 47 U.S.C. § 605 for unauthorized interception and broadcast of television programming. Plaintiff originally filed a motion for default judgment on September 12, 2014. (ECF No. 17). On October 30, 2014, the Court denied that motion due to Plaintiff's failure to submit any affidavits, proofs, or briefings to support an award of damages. (ECF No. 18). The Order directed Plaintiff to submit the appropriate affidavits, proofs, and briefings to support an award of damages. (*Id.*).

On December 23, 2014, Plaintiff filed a new motion for default judgment. (ECF No. 19). Defendants did not oppose. For the reasons set forth below, the motion is hereby **GRANTED**.

I.   FACTUAL BACKGROUND

Plaintiff J & J Sports Productions, Inc. stands at the forefront of the Pay-Per-View Broadcast industry. (ECF No. 19-1, Affidavit of Joseph Gagliardi ("Gagliardi Affidavit") ¶ 12). Plaintiff owns the rights for the commercial distribution of the

1

Mayweather/Alvarez Broadcast fight, which began on September 14, 2013 (the "Program"). (*Id.* ¶ 3). Plaintiff marketed the sub-licensing of the Program to commercial establishments in New Jersey for a fee. (*Id.*).

Prior to broadcast of the Program, Plaintiff hired Signal Auditing to identify establishments that unlawfully exhibited the Program. (*Id.* at ¶ 5). Signal Auditing visited a bar called "Trolley Car," located at 332 Palisades Avenue in Jersey City on September 14, 2013. (ECF No. 19-4). Defendants own and operate Trolley Car. The Defendants did not purchase the rights to broadcast the Program. (Gagliardi Affidavit at ¶ 7).

Signal Auditing's representative paid a $20 cover fee to enter the bar. He observed that the bar had a capacity of 50-100 people. He also observed four televisions. One of them was playing the Broadcast. (*Id.* at ¶ 8). He recorded video of the Program being played. (*See* CD attached to ECF No. 19).

Plaintiff filed the Complaint on January 27, 2014. (ECF No. 1). Plaintiff served the Summons and Complaint on Defendants on April 3, 2014. (ECF Nos. 4-5). On April 23, 2014, the date when Defendants' Answer was due, Plaintiff notified the Court that the dispute had been resolved amicably. (ECF No. 6). The Court dismissed the case via an order giving Plaintiff the option to re-open within 60 days if the settlement was not consummated. (ECF No. 7). Defendants failed to honor the terms of the settlement, and on June 10, 2014, Plaintiff filed a motion to re-open the case, which the Court granted. (ECF Nos. 8, 15). The Clerk of Court entered default against Defendants on September 12, 2014. No opposition to either of Defendants' motions for default judgment was filed.

## II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because Plaintiff brings this civil action pursuant to 47 U.S.C. § 605. In addition, the court exercises personal jurisdiction over all named Defendants because they were physically located in the state of New Jersey at the time they were served with process in this matter. *See* Fed. R. Civ. P. 4(k)(1)(A); N.J. Ct. R. 4:4–4(a).

## III.   LEGAL STANDARD

The mere fact of default does not entitle Plaintiff to judgment. To enter a default judgment, the court must first determine whether a sufficient cause of action has been stated, taking as true the factual allegations of the Complaint. *See Chanel,*

*Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008).  Once a cause of action has been established, the district courts must make explicit factual findings as to three factors: (1) whether the party subject to default has a meritorious defense; (2) the prejudice suffered by the party seeking default; and (3) the culpability of the party subject to default.  *Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013) (*citing Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).  Although the facts pled in the Complaint are accepted as true, Plaintiff must prove damages.  *See Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990).

## IV. DISCUSSION

### A. Cause of Action

Section 605 penalizes those who illegally intercept proprietary communications.  *Joe Hand Promotions, Inc. v. Cerreto*, 2014 WL 4612101, at *2 (D.N.J. Sept. 15, 2014).  When a plaintiff seeks relief under 47 U.S.C. § 605 for the unauthorized interception and broadcast of television programming, its burden is to show that the defendant "(1) intercepted a broadcast; (2)[was] not authorized to intercept the broadcast; and (3) showed the broadcast to others."  *Waldron*, 2013 WL 1007398, at *3.

Plaintiff provides evidence proving each of these elements.  The Plaintiff submitted a list of New Jersey commercial entities that had entered into sublicense agreements to show the Broadcast, and Defendant is not among these.  (ECF No. 19-3).  A representative of Signal Auditing provided a Boxing Piracy Affidavit detailing his observation of the Defendants' playing the Program on a television at Trolley Car.  (ECF No. 19-4).  Signal Auditing supplemented this Affidavit with video of the Program playing at Trolley Car.  Joseph Gagliardi, Plaintiff's President swore in his Affidavit that there is no way that the Program could have been "mistakenly or innocently intercepted."  (Gagliardi Affidavit at ¶ 11).  This evidence suffices to satisfy each of the elements of a Section 605 claim.

### B. Factual Findings

Having established a cause of action, the Court now makes factual findings as to: (1) whether the party subject to default has a litigable defense; (2) the prejudice suffered by the party seeking default; and (3) the culpability of the party subject to default.  *Waldron*, 2013 WL 1007398, at *4.  First, there is no indication that

3

Defendants have any defense to Plaintiff's allegations that Defendants displayed the Program to patrons without contracting for rights to do so. Second, Plaintiff suffers prejudice if it doesn't receive a default judgment because it has no alternative means of vindicating its claim against the defaulting parties. *Waldron*, 2013 WL 1007398, at * 4. Third, where, as here, Defendants have failed to respond, there is a presumption of culpability. *Id.* Thus, the *three* factors weigh in favor of entering default judgment.

### C. Damages

Rule 55(b)(2)(B) specifies that a "court may conduct hearings . . . when . . . it needs to . . . determine the amount of damages" owed a party upon an entry of default judgment. "The permissive language of the rule recognizes that such a proceeding will not be necessary in all circumstances, however, such as when 'damages are for a sum certain or for a sum which can by computation be made certain.'" *Waldron*, 2013 WL 1007398, at *4 (*quoting Joe Hand Promotions, Inc. v. Krist*, 2012 WL 6628934, at *1 (W.D. Pa. Dec. 19, 2012)). In this case, "as Plaintiff seeks statutory damages, costs, and attorneys' fees, all of which can by computation be made certain," the Court finds that it can award damages without a hearing. *Waldron*, 2013 WL 1007398, at *4.

Under Section 605, a private party "aggrieved" by the unauthorized reception of communications may be awarded statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). Statutory damages range from $1,000 to $10,000. *Id.* The Court chooses an amount within these ranges that it "considers just" under the circumstances. *Id.* In addition, if the unauthorized reception of the communications was done "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the court has discretion to award "enhanced damages," increasing the range to $100,000 in the case of Section 605. 47 U.S.C. § 605(e)(3)(C)(ii); *see also Waldron*, 2013 WL 1007398, at *5.

Under Section 605(e)(3)(C)(i), the court can calculate damages via two alternate methods. Plaintiff may recover "actual damages" or "statutory damages . . . as the court considers just." 47 U.S.C. § 605(e)(3). Where, as here, Defendants have not responded to the Complaint, and proof of actual damages is impossible, statutory damages "as the court considers just" are appropriate. *See Waldron*, 2013 WL 1007398, at *6; *J & J Sports Prods., Inc. v. Edrington*, 2012 WL 525970, at *3 (D.N.J. Feb. 16, 2012).

4

Plaintiff requests the maximum $10,000 in statutory damages and $25,000 in enhanced damages for willful conduct. Courts have taken many approaches in awarding statutory damages where a defendant illegally exhibits a closed-circuit broadcast but fails to answer the complaint. *Waldron*, 2013 WL 1007398, at *4; *Joe Hand Promotions, Inc. v. Yakubets*, 2014 WL 960787, at *7-10 (E.D. Pa. Mar. 11, 2014). Three of the most recent cases in this district have taken the position that the statutory damages should approximate the actual damages. *Joe Hand Promotions, Inc. v. Cerreto*, 2014 WL 4612101, at *4 (D.N.J. Sept. 15, 2014); *Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *6 (D.N.J. Mar. 13, 2013); *J & J Sports Prods., Inc. v. Edrington*, 2012 WL 525970, at *3 (D.N.J. Feb. 16, 2012). The total sum, including both statutory and enhanced damages, should be high enough to deter future violations and yet be "just." *See Waldron*, 2013 WL 1007398, at *8. A "just" penalty is commensurate with the wrong, taking into consideration the totality of the circumstances surrounding the illegal conduct.

The Plaintiff alleges actual damages in the forms of a lost sublicense fee and loss of goodwill. In this case, Plaintiff charged a sublicense fee of $2,200 for an establishment of 0-100 people, such as Trolley Car.

*Cerreto* provides a model for estimating damages resulting from loss of goodwill. In *Cerreto*, this Court addressed a very similar violation. *Cerreto* involved the pirating of a closed-circuit boxing match at a modest-sized sports bar in Nutley, New Jersey. In *Cerreto*, we estimated actual damages for loss of goodwill by assuming that the defendant's actions would encourage one other establishment of similar size to pirate a broadcast rather than pay a licensing fee. 2014 WL 4612101, at *5. We therefore award Plaintiff an additional $2,200 for loss of goodwill.

Moreover, here, where Plaintiff agreed to settle the case and then failed to honor the settlement, the Court finds it just to add an additional $600 to punish and discourage similar dilatory tactics. We acknowledge that this goes outside of the standard of simply trying to estimate actual damages, but it is well within the ambit of what Section 605 permits a court to award for statutory damages. This brings statutory damages to $5,000, a sum that is just under the circumstances.

Where the unauthorized reception of a broadcast was done "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the court has discretion to award "enhanced damages," increasing the range to $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). To calculate enhanced damages, the courts in our district have been applying five factors listed in *Kingvision Pay–Per–View Ltd. v. Rodriguez*, 2003 WL 548891 (S.D.N.Y. Feb. 24, 2003). *See Waldron*, 2013

WL 1007398, at *7; *Edrington*, 2012 WL 525970, at *3.  The factors considered include: (1) whether the defendants have intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether they reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendants advertised their intent to broadcast the event; and (5) whether the defendants levied a cover charge or significant premiums on its food and drink because of the broadcast.  *Waldron*, 2013 WL 1007398, at *7 (*citing Rodriguez*, 2003 WL 548891, at *2).

There is no proof to establish what kind of profits from the sale of food or drink might have been made because Plaintiff provides no evidence of the number of people at the bar nor a menu.  Plaintiff also states in its brief that the event was advertised, but there is no proof submitted to support this allegation.  There is no evidence that Trolley Car has engaged in pirating before.  There is no evidence of significant actual damages or substantial profits.  Nevertheless, there is evidence of a $20 cover fee, which does demonstrate willfulness and a flagrant effort to financially benefit from piracy.

We will award $2,000 in enhanced damages.  We derive this sum by assuming that Trolley Car was filled to its 100-person capacity and charged the $20 cover fee to each of those people.

This brings the calculation of statutory and enhanced damages to a total penalty of $7,000.  The Court considers this sum just given that Trolley Car is a modest establishment in a working-class neighborhood which, nevertheless, willfully committed a very serious violation of federal law and wasted the resources of the Plaintiff and the Court in its dilatory conduct after being served with the Complaint.

### D. Costs and Attorneys' Fees

Finally, Plaintiff seeks to recover costs and attorneys' fees related to this action.  Section 605 directs the court to award costs and attorneys' fees to an aggrieved party who prevails on its claim. 47 U.S.C. § 605(e)(3)(B)(iii) (providing for recovery of "full costs, including . . . reasonable attorneys' fees").  Plaintiff's counsel has submitted an affidavit detailing the costs and fees incurred in the prosecution of this action.  (Declaration of Wayne Lonstein, Esq.).  Such costs include $400 to file the lawsuit, $400 to effectuate service, and $7,208.25 in legal fees. The legal fees include 7.95 hours of a partner's work, 12.82 hours of associate attorneys' work, and 12.85 hours of paralegals' work.  The partner billed at $350 per

hour, associates at $250 per hour, and paralegals at $95 per hour. These are reasonable rates. Considering the Defendants' dilatoriness in agreeing to settle and then failing to honor the agreement and their failure to appear at scheduled conferences, the number of hours spent is reasonable, with one exception. The Court will not award Plaintiff the $260.00 in legal costs incurred between September 10, 2014 and September 12, 2014 on its first, faulty attempt to file a motion for default judgment. This brings the award for fees and costs to $7,748.25.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is hereby granted. Judgment will be entered in the amount of $14,748.25, consisting of $5,000 in statutory damages, $2,000 in enhanced damages, and $7,748.25 in fees and costs. An appropriate order and judgment follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 28, 2015**